IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| PRECISION OF NEW HAMPTON, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TRI COMPONENT PRODUCTS CORPORATION,<br><br>Defendant.<br>------------------------------------<br>TRI COMPONENT PRODUCTS CORP.,<br><br>Third-Party Plaintiff,<br><br>vs.<br><br>KNOWLTON TECHNOLOGIES, L.L.C.,<br><br>Third-Party Defendant. | No. C12-2020<br><br>ORDER REGARDING MOTION TO COMPEL |

TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV. DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.  *Are Jones' Opinions Discoverable By Precision?* . . . . . . . . . . . . . . . . . 5
    B.  *Did Tri Component Waive the Protections Afforded to Jones'*
        *Opinions?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*V. SUMMARY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*VI. ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion to Compel Discovery (docket number 43) filed by the Plaintiff on April 19, 2013, the Resistance (docket number 44) filed by the Defendant on May 6, and the Reply (docket number 45) filed by the Plaintiff on May 13. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On February 7, 2012, Plaintiff Precision of New Hampton, Inc. ("Precision") sued Defendant Tri Component Products Corporation ("Tri Component") in the Iowa District Court for Chickasaw County. Precision is in the business of rebuilding torque converters and other automobile parts. Tri Component, a New York corporation, manufactured and sold products to Precision, including friction paper and bearings. Precision claims that the products sold by Tri Component were defective, thus causing Precision's products — sold to end users — to fail. Precision claims entitlement to recover for breach of implied warranty (Count I) and breach of contract (Count II).

The action was removed to this court on March 13, 2012. Tri Component filed an answer on April 13, generally denying Precision's allegations, and asserting certain affirmative defenses. On June 11, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Also at that time, pursuant to 28 U.S.C. § 636(c) and the consent of the parties, the case was referred to me for all further proceedings.

On August 3, 2012, the Court granted, without objection, Tri Component's motion to add a third-party claim against Knowlton Technologies, L.L.C. ("Knowlton"). The third-party complaint asserts that the friction paper was manufactured by Knowlton, and if it was defective, then Tri Component is entitled to recover against Knowlton for contribution or indemnity. Knowlton filed an answer on August 30, denying the allegations and asserting affirmative defenses. Precision filed a cross-claim against

2

Case 6:12-cv-02020-JSS   Document 48   Filed 06/05/13   Page 2 of 13

Knowlton on January 31, 2013, and Knowlton filed its answer to the cross-claim on February 8.

Meanwhile, on October 1, 2012, the Court entered an Order continuing the trial and extending certain pretrial deadlines. The trial is now scheduled on October 28, 2013, with a final pretrial conference scheduled on October 4.

### III. RELEVANT FACTS

The issue raised by the instant motion is whether Precision is entitled to discover opinions held by Aaron J. Jones, P.E., an expert who traveled to Precision's plant in New Hampton at Tri Component's request. Jones has a B.S. and M.S. in metallurgical and materials engineering, and is a "Ph.D. candidate" in materials engineering. According to his resumé, Jones is senior director, materials and transportation engineering, at Packer Engineering, Inc. in Naperville, Illinois.[1] According to Tri Component's resistance, which is signed by counsel and not sworn, Tri Component retained Jones "[b]efore suit was filed," and traveled to Precision's plant in New Hampton on about November 12, 2009.[2]

It is apparently undisputed that while at Precision's plant in New Hampton, Jones met with Dennis Hansen, Precision's "principal owner and chief executive officer," and representatives of Tri Component's insurer. Jones examined the torque converters and the parts believed to be defective, and apparently took photographs of the allegedly defective parts.[3]

---

[1] A copy of Jones' resumé is attached to Tri Component's resistance as Exhibit A (docket number 44-1).

[2] Tri Component's Resistance (docket number 44) at 1.

[3] *Id.* at 2.

3

In an affidavit filed in support of the instant motion to compel, Hansen asserts that "[f]ollowing the inspection, and while still at our plant, Mr. Jones verbally informed me that he agreed with my assessment that the bearings and friction paper sold to Precision by Tri Component were defective and were the cause of the damage not only to the torque converters but also to the transmissions to which the torque converters were attached."[4] Hansen further avers that following the visit by Jones, Hansen received a phone call from Christian Jursnick, an adjuster with Liberty Mutual Insurance Company, Tri Component's insurance carrier. According to Hansen's affidavit, "[t]he adjuster read to me portions of the Jones report indicating Mr. Jones' opinion that the bearings and friction paper were defective and were the cause of the loss and damage to Precision and to its customers."[5]

Tri Component has *not* identified Jones as an expert which it intends to call at trial. Nonetheless, Precision asks that it be allowed to take Jones' deposition. Tri Component resists, arguing that Precision has not shown "exceptional circumstances," as required by FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D). Tri Component notes that Precision has identified William J. Durako, Jr., P.E., president and principal engineer of Materials Engineering, Inc., as an expert who Precision intends to call at trial.

## IV. DISCUSSION

Resolution of Precision's motion to compel requires the Court to address two questions: First, are the opinions held by Jones — an expert retained by Tri Component, but who has not been designated as a witness — discoverable by Precision; and second, if Jones' opinions are otherwise not discoverable, has the protection been waived by statements made by Jones or Tri Component's insurer?

---

[4] Affidavit of Dennis Hansen (docket number 43-3) at 2, ¶ 7.

[5] *Id.* at 2-3, ¶ 8.

4

### A. Are Jones' Opinions Discoverable By Precision?

When, as here, a party seeks to depose a non-testifying expert retained by an opposing party in anticipation of litigation, FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D) governs. The Rule provides:

> (D) *Expert Employed Only for Trial Preparation.* Ordinarily, a person may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
> (i) as provided in Rule 35(b); or
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

The purpose of Rule 26(b)(4)(D) is to promote fairness by precluding a party from using an opponent's expert to build his own case. *Brown v. Ringstad*, 142 F.R.D. 461, 465 (S.D. Iowa 1992). The rule aims to prevent a party from benefitting from the effort expended and costs incurred by the opposing party while preparing for litigation. *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995). The rule also protects an "important interest in allowing counsel to obtain the expert advice they need . . . without fear that every consultation with an expert may yield grist for the adversary's mill." *Id.* Thus, the Rules set a high barrier for discovery of a non-testifying expert's opinions, with the only exceptions being medical examinations under FEDERAL RULE OF CIVIL PROCEDURE 35(b) or a showing of "exceptional circumstances." *Sara Lee Corp. v. Kraft Foods Inc.*, 273 F.R.D. 416, 419 (N.D. Ill. 2011).

A party seeking discovery of facts or opinions held by a non-testifying consulting expert bears the burden of showing exceptional circumstances. *Hartford Fire Ins. Co. v. Pure Air On The Lake Ltd.*, 154 F.R.D. 202, 207-08 (N.D. Ind. 1993). Courts have interpreted exceptional circumstances to mean that the party cannot obtain equivalent

5

information from another source. *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La. 1990). For example, in *In re Shell Oil*, the court denied the plaintiff's request to see results of tests conducted by Shell because the plaintiffs could obtain the same information by using their own experts. *Id.* at 443. Similarly, in *Sara Lee Corp. v. Kraft*, the court found exceptional circumstances lacking where the party seeking discovery had retained an expert to testify on the same subject. *Sara Lee Corp.*, 273 F.R.D. at 420.

However, courts have found exceptional circumstances where the object or condition at issue cannot be observed by experts of the party seeking discovery. *Hartford Fire Ins. Co.*, 154 F.R.D. at 208. For example, in *Delcastor, Inc. v. Vail Associates, Inc.*, 108 F.R.D. 405, 409 (D. Colo. 1985), the court found exceptional circumstances where only the defendant's expert had an opportunity to investigate the cause of a mud slide before conditions at the site changed. *Id.* The court noted that exceptional circumstances exist when "circumstances precluded all but one of the party's experts from gaining a first hand observation of the object of condition." *Id.*

The Court concludes Jones' opinions are not discoverable because Jones is a non-testifying consulting expert and there are no "extraordinary circumstances" as required by FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D). As in *Shell Oil*, where the party seeking discovery could use its own experts to obtain the same information, Precision can procure equivalent information by using its own experts to examine the allegedly defective parts. In fact, Precision has retained an expert with materials engineering expertise to examine the parts, and intends to call this expert at trial. As in *Sara Lee*, exceptional circumstances are lacking because Precision has an expert to testify on the same subject. Furthermore, because the allegedly defective parts have remained in Precision's possession, this is not a case where the objects at issue cannot be observed by the party seeking discovery. Unlike *Delcastor*, where the court found exceptional circumstances because only one party's expert had the opportunity to investigate before relevant

6

information was destroyed, no destruction occurred here. There are no circumstances preventing Precision's expert from examining the parts first hand and thereby acquiring the same information gathered by Jones. Therefore, Precision cannot establish "extraordinary circumstances" as required to depose Jones.

Precision argues that the information gathered by Jones when he visited Precision's plant falls under the work product doctrine, and that Precision has satisfied the requirements to compel discovery of work product. Precision's Brief in Support of Motion to Compel Discovery (docket number 43-2) at 3. The work product doctrine limits discovery of documents prepared by or for another party, or by or for that other party's agent, in anticipation of litigation. *In re Agriprocessors, Inc.*, 2012 WL 2974896, at *3 (Bankr. N.D. Iowa). The work product doctrine was incorporated into FEDERAL RULE OF CIVIL PROCEDURE 26(b)(3), which sets out the criteria for discovering work product. Similar to FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D) which requires that a party show "extraordinary circumstances" to discover the opinions of a non-testifying expert, FEDERAL RULE OF CIVIL PROCEDURE 26(b)(3) compels a party to show a "substantial need" in order to discover "documents and tangible things" prepared by another party in anticipation of litigation. As in Rule 26(b)(4)(D), which requires that it be "impracticable . . . to procure facts or opinions on the same subject by other means," Rule 26(b)(3) requires that the party seeking discovery of documents prepared in anticipation of litigation "cannot, without undue hardship, obtain their substantial equivalent by other means." Thus, the requirements for discovering a non-testifying expert's opinions and the requirements for discovering work product appear very similar.

Courts disagree over the relationship between FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D) and the work product doctrine. In *Vanguard Savings & Loan Ass'n v. Banks*, 1995 WL 71293, at *2 (E.D. Pa. 1995), while considering whether Rule 26(b)(4)(B) extends work product privilege to non-testifying experts or if it provides protection

7

independent of the work product rule, the court found that "Rule 26(b)(4)(B) is unrelated to the work product privilege." *See also Hartford Fire Ins. Co.*, 154 F.R.D. at 206 n.6 ("The concept of privilege, or work product, does not apply to the discovery of a consulting expert's opinion."). However, in *House v. Combined Insurance Company of America*, 168 F.R.D. 236, 245 (N.D. Iowa 1996), the Northern District of Iowa noted that an expert consulted by a party but never designated as a witness "might properly be considered to fall under the work product doctrine that protects matters prepared in anticipation of litigation." The court stated that whether the expert was ever designated as an expert expected to testify under Rule 26(b)(4)(A) affects the ability of the opposing party to use the expert, and the ability to call a never-designated expert at trial should only be allowed upon showing extraordinary circumstances. *Id.* The court reasoned that "parties should be encouraged to consult experts to formulate their own cases, to discard those experts for any reason, and to place them beyond the reach of an opposing party, *if* they have never indicated an intention to use the expert at trial." *Id.*

While Precision argues that the opinions of Jones fall under the work product doctrine, the applicability of the doctrine to opinions held by non-testifying experts appears dubious. Even if the work product analysis applies, Precision would still have to establish "substantial need" and the inability to obtain equivalent information by other means. As discussed, Precision has retained an expert to examine the allegedly defective parts and to testify at trial. Considering that Precision can use its own expert to examine the alleged defects, it lacks "substantial need" and the inability to obtain the equivalent of Jones' opinions. Thus, the Court finds that the opinions held by Jones are not discoverable under the work product analysis.

8

### B. Did Tri Component Waive the Protections Afforded to Jones' Opinions?

Precision also argues that Tri Component waived work product privilege through disclosures made by Jones and Tri Component's insurer. It is unclear, however, whether the waiver doctrine applies to Rule 26(b)(4)(D). In *Vanguard Savings & Loan Ass'n v. Banks*, 1995 WL 71293 (E.D. Pa. 1995), the court rejected the defendant's argument that the plaintiff had waived Rule 26(b)(4)(D) protections by disclosing a non-testifying expert's report to third parties. The court reasoned that Rule 26(b)(4)(D) protects against discovery of information known by non-testifying experts for "reasons entirely independent of the work product doctrine." *Id.* at *2. The court found that because the Rule stems from fairness considerations rather than the work product doctrine, the defendant's claim that the plaintiff waived work product privilege was "wholly irrelevant." *Id.* The court found it immaterial that the plaintiff may have voluntarily disclosed the expert report to third parties, and stressed that the only relevant question is whether the plaintiff meets the requirements of Rule 26(b)(4)(B). *Id. See also Ludwig v. Pilkington N. Am., Inc.*, 2003 WL 22242224, at *3 (N.D. Ill. 2003) (finding that where a party enjoys protection under Rule 26(b)(4)(D), the protection is not subject to waiver).

Other courts have suggested, however, that the protections afforded by Rule 26(b)(4)(D) can be waived. In *Hartford Fire Ins. Co. v. Pure Air On The Lake Ltd.*, 154 F.R.D. 202, 211 (N.D. Ind. 1993), the court considered whether the defendant waived the protections of Rule 26(b)(4)(D) by issuing a short press release concerning its non-testifying expert's conclusions. The court stated that "arguably, the protections afforded under Federal Rule of Civil Procedure 26(b)(4)(B) are waivable." *Id.* The court noted that generally waiver of a privilege occurs when actions taken by the holder make it unfair to insist that the privilege remains intact. *Id.* The court also stated that courts have found a waiver when the holder of a privilege "voluntarily discloses . . . any significant part of

9

Case 6:12-cv-02020-JSS   Document 48   Filed 06/05/13   Page 9 of 13

the privileged matter." *Id.* (citations omitted). The court found that no waiver occurred because the "minuscule" disclosure in the press release did not make it unfair to insist that the protection remained. *Id.* The court also found that the disclosure did not constitute a significant portion of the privileged material because the defendant did not "begin to recite all of [the expert's] studies, factual findings, or conclusions." *Id.*

Courts have also rejected waiver arguments that are based on actions taken by parties who were not the holders of the privilege. *United States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 338 (W.D.N.Y. 1986). In *Hooker Chemicals*, the court rejected an argument that the defendant had waived Rule 26(b)(4)(B) protections by its expert making disclosures to the press. The court reasoned that no waiver occurred because only the holder of the protections of Rule 26(b)(4)(B), the defendant, could waive the protections. *Id.*

Even where a court finds that a party waived protections afforded by Rule 26(b)(4)(B), the waiver may be limited in scope. *Hollinger International Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 521 (N.D. Ill. 2005). In *Hollinger*, the court found that when the plaintiff disclosed part of its expert's findings, it only waived the protections of Rule 26(b)(4)(B) as to the items actually disclosed. *Id.* The court stated that the partial disclosure of the non-testifying expert's findings "did not automatically forfeit the protection of Rule 26(b)(4)(B) as to the withheld information or place the entirety of his work at issue." *Id.* at 522.

Here, Tri Component did not waive the protections of FEDERAL RULE OF CIVIL PROCEDURE Rule 26(b)(4)(D). It appears dubious that the waiver doctrine applies to the protections afforded to facts known or opinions held by non-testifying consulting experts. Even if the protections of Rule 26(b)(4)(D) can be waived, it does not appear that any actions taken by Tri Component make it unfair to insist that the privilege still exists. As in *Hooker Chemicals* — where the party itself did not make the disclosures that formed the

10

basis of the waiver argument — Jones and Tri-Component's insurer, rather than Tri Component itself, made the disclosures that Precision argues amount to a waiver. These disclosures do not constitute a waiver of the protections of Rule 26(b)(4)(D) because only Tri Component, as holder of the protections, could waive them. Furthermore, even if the disclosures of Jones and Tri Component's insurer did amount to a waiver, the waiver would not necessarily apply broadly to allow further discovery from Jones. *Hollinger* shows that some courts have limited the scope of waivers of Rule 26(b)(4)(D), so that the partial disclosures of Jones' findings may not make the entirety of Jones' work, including the opinions held by Jones, discoverable by Precision. *Hollinger*, 230 F.R.D. at 522.

While Precision argues that Tri Component waived work product privilege, the applicability of the work product doctrine to the protections afforded by Rule 26(b)(4)(B) appears unclear. *Compare Vanguard Sav. & Loan Ass'n v. Banks*, 1995 WL 71293, at *2 (E.D. Pa.) ("Rule 26(b)(4)(B) is unrelated to the work product privilege) *and Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 116 F.R.D. 533, 539 (N.D. Cal. 1987 ("the work retained experts do in anticipation of litigation is not work product"), *with House v. Combined Ins. Co.*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("A consulted-but never-designated expert might properly be considered to fall under the work product doctrine . . .") *and Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1024 (7th Cir. 2012) (stating Rule 26(b)(4)(D) "is simply an application of the work product rule").

The protections of the work product doctrine can be waived. *In re Chrysler Motors Corp.*, 860 F.2d 844, 846 (8th Cir. 1988). The waiver of work product privilege can be express or implied. *In re Agriprocessors, Inc.*, 2012 WL 2974896, at *5 (Bankr. N.D. Iowa). In regard to implied waiver, the courts consider whether the party intended to waive the privilege and whether the "interests [of] fairness and consistency" support finding a waiver. *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002). In *In re Agriprocessors*, the court found that the defendant waived its work product

11

privilege as to expert reports that the defendant had allowed the plaintiff to review at a settlement conference. *In re Agriprocessors*, 2012 WL 2974896, at *5. The court reasoned that showing the plaintiff the report demonstrated an intent to waive the work product privilege, and in the interest of fairness the court should not allow the defendant to assert work product protections for information it had previously intentionally shared. *Id.* Similarly, in *In re Chrysler Motors Corp.*, the court held that Chrysler waived work product protection by voluntarily disclosing a computer tape to the opposing parties during settlement negotiations. *In re Chrysler*, 860 F.2d at 846.

Even if the work product doctrine applies to the question of whether Tri Component waived the protections afforded to Jones' opinions, it still does not appear that Tri Component waived work product privilege. Unlike *In re Agriprocessors* and *In re Chrysler*, where the courts found that a party waived its work product privilege as to information it intentionally shared with the opposing party, Tri Component did not make any intentional disclosures to Precision that demonstrate an intent to waive work product privilege. Precision argues that disclosures made by Jones and Tri Component amount to a waiver, but actions taken by Jones and the insurer do not reveal an intent by Tri Component to waive the privilege. Considering that Tri Component itself has not disclosed privileged information to Precision, the interests of fairness and consistency do not support finding a waiver. Therefore, Tri Component did not waive work product privilege.

## V. SUMMARY

In conclusion, the opinions held by Jones are not discoverable. Precision cannot show exceptional circumstances as required by FEDERAL RULE OF CIVIL PROCEDURE 26(b)(4)(D), because it can obtain equivalent information on the same subject by having its own expert examine the allegedly defective parts. Statements made by Jones and Tri Component's insurer did not waive the protections afforded to Jones' expert opinions

because only Tri Component, as the holder of the protections, could waive them. Even under a work product doctrine analysis, Precision cannot show "substantial need," as required by Rule 26(b)(3). Accordingly, Jones' opinions are not discoverable, and the statements of Jones and Tri Component's insurer do not constitute a waiver. Therefore, Precision cannot discover the opinions held by Jones.

## VI. ORDER

IT IS THEREFORE ORDERED that the Motion to Compel Discovery (docket number 43) filed by Plaintiff is **DENIED**.

DATED this 5th day of June, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA